Plaintiff's assignments of error are based primarily upon the Deputy Commissioner's assessment of the credibility of plaintiff and Drs. Crisp and Hardy. Although no specific findings regarding the credibility of witnesses were made, it is clear from the findings and conclusions of the Deputy Commissioner that he did not accept the conclusions of causation presented in the medical testimony which was before him in depositions. When reviewing the credibility determinations of a Deputy Commissioner N.C. Gen. Stat. § 97-85 empowers the full Commission, after application, to review an award of a deputy commissioner and "if good ground be shown therefor, [to] reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award."
Ordinarily, the Full Commission is the sole judge of the credibility of witnesses. See Watkins v. City ofAsheville, 99 N.C. App. 302, 303, 392 S.E.2d 754, 756,disc. rev. denied, 327 N.C. 488, 397 S.E.2d 238 (1990). However, in cases where the Full Commission does not conduct a hearing and reviews a cold record, North Carolina has recognized the general rule that "the hearing officer is the best judge of the credibility of witnesses because he is a firsthand observer of witnesses whose testimony he must weigh and accept or reject."Pollard v. Krispy Waffle, 63 N.C. App. 354, 357,304 S.E.2d 762, 764 (1983), and Sanders v. Broyhill FurnitureIndustries, 124 N.C. App. 637, 478 S.E.2d 223 (1996),disc. review denied, 346 N.C. 180, 486 S.E.2d 208
(1997).
In this instance the Full Commission has had the same opportunity to evaluate the medical testimony presented through depositions as did the Deputy Commissioner and the Deputy Commissioner did not make a finding that the testimony of plaintiff concerning how her injury occurred was not credible.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, at the hearing, and by post-hearing agreement as
 STIPULATIONS
1. On 26 February 1996, the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. Zurich American Insurance Company was the workers' compensation insurance carrier on the risk.
4. Plaintiff's average weekly wage was $445.48.
5. Plaintiff's medical records from Pitt County Memorial Hospital and Drs. James R. Jackson, John R. Leonard III, Ira M. Hardy II, and L.M. Crisp, Jr., collectively marked as "Stipulated Exhibit Number Two", are admitted into evidence.
6. Plaintiff's answers to defendants' interrogatories, marked as Stipulated Exhibit Number Three, are admitted into evidence.
7. An Industrial Commission Form 19, Employer's Report of Injury to Employee, marked as Stipulated Exhibit Number Four, is admitted into evidence.
8. Fourteen pages of plaintiff's medical records form Dr. L.M. Crisp, Jr., received from defendants' counsel on 13 December 1996, are admitted into evidence.
 EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. L.M. Crisp, Jr. and Dr. Ira M. Hardy II are OVERRULED.
 *********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-nine years old. She received no education after completing the ninth grade. She is right handed. Plaintiff has worked as a sewer for more than twenty years, primarily sewing sleeve cuffs, button holes and buttons.
2. Plaintiff was employed by defendant-employer in October, 1990. Plaintiff operated the button hole and button machine and the button down and bottom cuff machine. While so employed in 1992, plaintiff sustained a neck injury which caused her to experience neck and right arm pain with weakness in her right triceps. Dr. Leonard performed two surgical procedures to treat plaintiff's neck injury. On 14 December 1992, Dr. Leonard performed a partial hemilaminectomy and foraminotomy at C6-C7 with an excision of a herniated disc. Thereafter, plaintiff continued to experience severe neck and right arm pain with numbness extending into her index finger. Due to her continuing symptoms, Dr. Leonard performed a right partial hemilaminectomy and foraminotomy at C5-C6. This surgery was performed on 18 August 1993. On 30 November 1993, plaintiff had chronic pain, the reflexes in her right upper extremity were diffusely depressed and she continued to experience numbness along the C6 distribution.
3. Plaintiff filed a claim for worker's compensation based upon her 1992 neck injury and another claim for change of condition in April, 1994. The parties resolved both claims by a compromise settlement agreement which was duly approved by the Industrial Commission on 10 October 1994.
4. Plaintiff returned to work for defendant-employer at sometime prior to 30 November 1993. On 12 May 1994, plaintiff presented to Dr. Leonard due to neck and right shoulder pain and pain that occasionally radiated into her right arm. Plaintiff believed that she needed another myelogram. She also stated that defendant-employer had changed the machine she operated and that the changes required her to work in new positions and to do a lot of pushing and shoving. Plaintiff associated these work changes with her increasing symptoms.
5. The button down machine was replaced with another model prior to 12 May 1994. Plaintiff continued her work using the new machine on a regular basis after the earlier model was replaced.
6. On 25 May 1994, plaintiff presented to Dr. L.M. Crisp, Jr. due to chronic neck pain. She experienced pain with flexion and extension of her neck. She reported to Dr. Crisp that she was unable to perform her usual work duties at her sewing table. Dr. Crisp recommended that plaintiff receive vocational rehabilitation. He also referred plaintiff for an evaluation from a second neurosurgeon.
7. Plaintiff presented to Dr. Ira M. Hardy II on 20 June 1994. Plaintiff informed Dr. Hardy that defendant-employer had changed the machines she operated at work and that when working with the new machine she held her head in a slightly flexed position with her arms extended in front of her. On that date, plaintiff was experiencing neck and right shoulder pain, headaches and numbness that extended into the fingers of her right hand.
8. Plaintiff continued working for defendant-employer through 26 February 1996. Prior to that date, plaintiff regularly complained to her co-workers about the neck pain she experienced. At times, plaintiff would refuse to work on certain machines because those machines increased her pain. On the morning of 26 February 1996, plaintiff worked on the "button down" machine for approximately twenty minutes. While working on this machine, plaintiff completed the sewing of a shirt, threw it to her right, and immediately felt a sharp pain in her neck and shoulder, and her entire arm became numb. Plaintiff reported to her supervisor that she was in pain, but did not describe any inciting event
9. Based upon the greater weight of the evidence, on 26 February 1996 plaintiff sustained an injury as a direct result of a specific traumatic incident of the work assigned by defendant-employer when she felt an immediate and acute onset of pain in her neck while throwing a shirt to her right.
10. Dr. Hardy stated, ". . . [T]here's no doubt that she has cervical disk disease, had two previous cervical laminectomies. But the pain that she had after the button-down machine incident was one of a new nerve root involved. She has chronic neck pain which you can attribute to all of this. Her C8 radiculopathy, though, produces a different kind of neurological deficit. She had recovered all her deficit from her previous. . . surgery because her arm strength in those particular muscles is good."
11. Plaintiff's recurrent use of the new or different machine at work which required her to position her body in an awkward position also significantly contributed to the ongoing pain plaintiff had been experiencing in her right arm and cervical area.
12. Plaintiff's work and her prior history of two surgeries placed her at an increased risk of developing an injury to her cervical area than members of the general public.
13. After leaving work on 26 February 1996, plaintiff presented to Dr. Crisp. Plaintiff was experiencing neck and right shoulder pain. Plaintiff informed Dr. Crisp that she had been working on the `button down" machine. She further stated that she could operate that machine without problems for short periods of time, but when she operated the machine for longer periods of time she began having difficulty. Plaintiff stated that she had been experiencing these problems for approximately one year. Plaintiff returned to Dr. Crisp's office the following day complaining of similar symptoms. Plaintiff also stated that she had been experiencing intermittent left arm numbness for a period of several weeks.
14. On 11 March 1996, plaintiff presented to Dr. Hardy. Plaintiff informed Dr. Ira M. Hardy II that she was operating a "button down" machine on 26 February 1996 when she experienced an acute onset of neck and right shoulder pain. Dr. Hardy ordered x-rays and a cervical myelogram. The x-rays revealed that plaintiff had a nearly total loss of disc height at C6-C7 with osteophyte changes and degenerative changes at C5-C6. After reviewing a post-contrast CT scan, Dr. Hardy believed that plaintiff had a soft disk protrusion at C7-T1. Dr. Hardy performed surgery on 4 June 1996.
15. Plaintiff did not have a soft disc protrusion at C7-T1. Rather, she had bilateral foraminal stenosis, or a narrowing of the nerve canal C7-T1 and left foraminal stenosis at C6-C7, which blunted the nerve root at C6-C7.
16. Plaintiff was released for light duty work 27 August 1996, but when she returned to work with the defendant-employer, she was told that they no longer desired her services. Thereafter, she did not seek other employment.
17. Dr. Hardy found that the plaintiff reached maximum medical improvement 4 December 1996 and he gave her a permanent partial disability rating for her neck of 15%.
18. Dr. Hardy was of the opinion that it would be futile for plaintiff to return to work considering her disability. He stated that in his opinion plaintiff had been disabled from competitive employment since the time he last saw her on 4 December 1996.
19. Plaintiff's claim herein is not barred by her previous compromise settlement agreement as plaintiff has sustained a new injury or a significant aggravation of her prior condition.
 *********
Based on the foregoing findings of fact and stipulations, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. For a disability to be compensable under North Carolina's Workers' Compensation Act, it must be either the result of an accident arising out of and in the course of employment or an "occupational disease." Hansel v. Sherman Textiles,304 N.C. 44, at 51, 283 S.E.2d 101-106 (1981).
2. On 26 February 1996 plaintiff sustained a compensable injury arising out of and in the course of her employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned when she felt an immediate and acute onset of pain in her neck while throwing a finished shirt to her right. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff has proven by the greater weight of the evidence that her disability since 26 February 1996 is causally related to her 26 February 1996 work-related injury. Plaintiff's injury on 26 February 1996 caused radiculopathy at the C8 level which produced a different kind of neurological deficit from her previous surgeries. Plaintiff's pain on 26 February 1996 involved a new nerve root.
4. Plaintiff's injury on 26 February 1996, materially aggravated the pre-existing condition of her neck and back resulting in part from continued use of machinery at work which required awkward body posture. As of 26 February 1996, plaintiff was no longer capable of working and earning pre-injury wages.
5. Plaintiff's job duties significantly contributed to the development of or significantly aggravated her foraminal stenosis, cervical pain and C8 radiculopathy and her right arm and shoulder pain. Plaintiff's job duties and prior surgeries also exposed her to a greater risk of developing these conditions than the public generally. Thus, plaintiff's disability is also due in part to occupational disease which she contracted as a result of her job duties with defendant-employer. Plaintiff's injury aggravated her pre-existing occupational disease. N.C. Gen. Stat. § 97-53(13).
6. As a result of her injury, plaintiff is entitled to temporary total disability compensation at the rate of $296.99 per week from 26 February 1996, through the date of hearing before the deputy commissioner and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to receive all reasonable medical treatment arising from her compensable injury that is necessary to effectuate a cure, provide relief, or lessen her disability, including the treatment and surgery by Dr. Hardy. N.C. Gen. Stat. § 97-25.
 *********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to the attorney's fee provided for below, defendants shall pay the plaintiff temporary total disability compensation at the rate of $296.99 per week from 26 February 1996, through the date of hearing before the deputy commissioner and continuing until further order of the Industrial Commission.
2. Defendants shall pay all medical expenses incurred, or to be incurred in the future, by plaintiff as a result of her compensable injury for so long as such examinations, evaluations and treatments tend to effect a cure, give relief, or lessen her disability when the bills for same have been submitted to defendants and approved through procedures adopted by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraph one of this Award shall be deducted from the sum to be paid the plaintiff and shall be paid directly to plaintiff's attorney; and, thereafter, plaintiff's attorney shall directly receive 25% of each week's disability compensation due the plaintiff.
4. Defendant shall bear the costs of this proceeding, and shall pay Dr. L.M. Crisp, Jr. an expert witness fee of $155.00, and Dr. Ira M. Hardy II an expert witness fee of $265.00.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________ THERESA B. STEPHENSON DEPUTY COMMISSIONER